UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| TUCKER ENERGY SERVICES, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION H-05-1265 |
| | § | |
| HYDRAQUIP CORP., *et al.,* | § | |
| | § | |
| Defendants. | § | |

# Opinion on Damages

1.     *Introduction.*

A vessel sank off the coast of Trinidad. Its owner paid to raise the wreck because it obstructed navigation. The owner seeks compensation from the manufacturer and a mechanical contractor for the removal costs, attorney's fees, and lost profits.

2.     *Background.*

The *Miss Nevelyn* was a lift boat – a self-elevating barge – designed and manufactured by Hydraquip Corp. She was owned by Tucker Energy Services. In early August 2004, while working off the coast of Trinidad, she began having problems with her jacking system.

Tucker contacted B. J. Chauvin, Hydraquip's representative and an employee of Flambeau Environmental, Inc. Tucker and Flambeau entered a written service agreement. On August 7, 2004, Chauvin went to Trinidad to repair the jacks. The next day he claimed to have solved the problem, and at Chauvin's request, the captain attempted to raise the barge. One of its three legs immediately failed, causing the barge to capsize and sink. In January 2005, the barge was raised and taken to port, where it was declared a total loss.

3.     Claim.

Tucker has no claim under Trinidadian law. Under maritime law, Tucker has sued Hydraquip and Flambeau for negligent design and repair, as well as breach of contract. Tucker

asks the court to award:

- The cost of the *Miss Nevelyn*      $3,300,000
- The cost to raise and remove the wreck      $3,000,000
- Lost revenue      $2,000,000
- Attorney fees      $750,000
- Pre-judgment interest      $700,000

Hydraquip moved for partial summary judgment that maritime law does not allow recovery for fees, removal costs, and lost profits. Alternatively, Hydraquip argues that Tucker waived consequential damages under Louisiana law.

4.    *Attorney Fees.*

Maritime disputes are governed by the American rule, under which each party ordinarily bears its own costs, absent a federal statute or contract that permits fees. *The Baltimore,* 75 U.S. 377, 392 (1869); *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 406 (5th Cir. 2003).

No provision in the contract permits attorney fees, and no national law permits fees on these facts.

Tucker argues for statutory fees because the contract was to be governed by Louisiana law. Louisiana statutes permitting fees are not federal ones, as required to override the presumptive application of the American rule. Also, this is a maritime claim, governed by maritime law. Louisiana law might govern some of the contract, but that general reliance on Louisiana law cannot modify the national rule in maritime claims.

Tucker's request for fees will be denied.

5.    *The Cost to Raise.*

A.    *Removal.*

In a total loss, the measure of damages does not usually include consequential damages. *King Fisher Marine Serv., Inc. v. NP Sunbonnet*, 724 F.2d 1181, 1186-87 (5th Cir. 1984); *see The*

*Umbria*, 166 U.S. 404, 421-22 (1897). When the owner is obliged to remove a wreck as an obstruction to navigation, the cost of raising the wreck may be included in maritime damages. *The Venus*, 17 F. 925, 926 (S.D.N.Y. 1883); *The Nebraska*, 17 F. Cas. 1271 (E.D.N.Y 1869). If the owner has acted reasonably, in the circumstances of the wreck, he may recover from a tortfeasor his reasonable expenses for removal. *In re Sincere Navigation Corp.*, 327 F. Supp. 1024, 1026 (E.D. La. 1971); *O'Brien Bros. v. The Helen B. Moran*, 160 F.2d 502, 504 (2d Cir. 1947).

The parties raise and dispute the meaning of *Albany Ins. Co. v. Bengal Marine, Inc.* 857 F.2d 250, 253 (5th Cir. 1988). Tucker claims that it allows recovery for wreck removal in cases of total loss of the vessel, when the vessel could not be abandoned where it lay without violating environmental and Coast Guard rules. Hydraquip distinguishes its application saying that in this case, it is the government of Trinidad that required the vessel to be removed. Further, if the vessel was removed because of Trinidad's decision, then the damages were consequential – not direct – because they do not flow immediately from an act or omission of Hydraquip.

First, *Albany* is not on point. The complete quotation is "Until the barge was cleaned, no shipyard or scrapyard would accept it, and the uncleaned barge could not be abandoned where it lay without violating environmental and Coast Guard rules." *Albany*, 857 F.2d at 253. The emphasis here is on the cleanliness of the barge, and not the hazard it may have posed to navigation. Second, this quotation is a finding, not a holding. The holding is that "plausible testimony precluded [the court] from decreasing the award merely because of the large discrepancy between damages, fair market value, and salvage value." *Id.*

The *Albany* recovered the cost of cleaning the residue from the cargo hopper as a direct necessity. This was faulty. Although it is true that a sunk barge may require cleaning, all barges that are used to carry pollutants must be cleaned before they may be salvaged, repaired, or used for a distinct cargo. Cleaning the barge is a direct cost of its particular employment. From the day it is put into service, its rates include compensation for that future cost. At the end of a charter carrying crude oil, for instance, a hold must be cleaned before it can be used to carry gasoline. At the end of its life – whether by collision or age – the holds must be cleaned before the salvor's acetylene torches touch it.

*Albany* holds that necessary expenses resulting from a collision – like mandatory wreck

removal – may be included in recovered damages.  It supports the conclusion that immediate necessities are not, by definition, consequential.  In maritime law, consequential damages are things like loss of future profits, goodwill, business reputation, and even mental anguish and physical inconvenience.  2 S. SORKIN, GOODS IN TRANSIT, § 11.10 [1](a) at 11-89, 90 (1999).  None of these may be recovered.

The vessel lay – with a portion of her hull protruding – in forty-five feet of water.  The parties agree that the *Miss Nevelyn* could not have been abandoned without violating Trinidadian law.  The requirement appears to have been a reasonable, fully legitimate regulation of the seaways of Trinidad, making the expense real rather than just a government extraction.  Like other direct damages, the tortfeasor must bear the cost.

B.      *Contractual Waiver*.

In the alternative, Hydraquip argues that Tucker waived consequential damages in the service agreement.

The agreement unequivocally limits recovery to contractually specified damages; therefore, it excludes consequential damages.  Tucker argues that the waiver is meaningless because it does not define consequential damages.  There is nothing complex or mysterious about its meaning; consequential damages is a common term at law – losses that do not flow directly from an injurious act.  This argument fails.

Nevertheless, costs to remove a wreck – when removal is mandatory – are not consequential damages.  Debate on whether Tucker waived consequential damages misses the point.

Hydraquip must bear the costs of wreck removal.

6.      *Lost Income*.

When a ship is a total loss, the owner may not be compensated for losing the use of the vessel.  *The Umbria*, 166 U.S. at 421-22; *Albany*, 857 F.2d at 253.  Recovery of the vessel's value allows the owner to use the money in an enterprise of his choice; full payment of the lost capital and the lost profits would be a double recovery.  The profits of the same voyage at the time of its loss, however, are recoverable as "net freight pending."  *The Umbria*, 166 U.S. at 422.

- 4 -

The term "freight" includes earnings of the voyage.  *La Bourgogne*, 210 U.S. 95, 136 (1908).  Charter hire – for the voyage – is in the nature of freight.  Where a vessel is under a short term charter, her owner is deprived of a vested current property if the ship cannot continue her voyage due to the fault of another.  *The Menominee*, 125 F. 530, 531, 535 (E.D.N.Y. 1903).

The contract rate for using the vessel is a guide for measuring a shipowner's lost income. *Delta Marine Drilling Co. v. M.V. Baroid Ranger*, 454 F.2d 128, 130 (5th Cir. 1972), *Umbria*, 166 U.S. at 421.  Harbert International had hired the *Miss Nevelyn* as a dormitory and work platform.  The contract was for $6,500 per day, and at the time she sank, twenty working days remained on the charter.  Harbert would have paid Tucker $30,000 for the remaining time, had she not sunk. The value of Tucker's interest includes that lost hire.  A reasonably short time charter for a work boat or project is the functional equivalent of a voyage.

Hydraquip must bear the costs of Tucker's lost revenue on the voyage.


7.     *Conclusion.*

Negligent parties are liable for direct damages, including necessary wreck removal.  The *Miss Nevelyn* was an obstruction to navigation and had to be removed.  Tucker may recover the costs of her wreck.

A vessel owner can recover lost profits from an existing charter contract.  The *Miss Nevelyn* had twenty days remaining on a charter contract.  Tucker may recover the lost profits from its existing charter.

Maritime law precludes recovery of attorney's fees absent a contract or federal statute.  No contract or federal statute on fees exists in this case.  Tucker may not recover its fees.


Signed on August 20, 2007, at Houston, Texas.


Lynn N. Hughes
United States District Judge